[Civ. No. 6248.   First Appellate District, Division One.—March 29, 1928.]

ANHEUSER–BUSCH BREWING ASSOCIATION (a Corporation), Respondent, v. FRED H. GREEN et al., Appellants.

Gerald C. Halsey and Frederic T. Leo for Appellants.

Goodfellow, Eells, Moore & Orrick, Orrick, Palmer & Dahlquist and R. W. Palmer for Respondent.

PARKER, J., *pro tem.*—This is an appeal from a joint and several judgment rendered against defendants in an action brought to recover damages alleged to have been sustained by plaintiff as the result of certain acts and omissions on the part of defendants as officers and directors of a corporation, as will more fully appear hereinafter.

The American Products Company was organized as a corporation under the laws of the state of California in 1918, the appellant Green being president thereof, the appellant Tuck being secretary and the appellant Guernsey treasurer. On December 31, 1920, a judgment was obtained by Anheuser-Busch Brewing Association (plaintiff herein) against American Products Company in the sum of $2,728.50, together with costs and interest. An appeal from such judgment was taken resulting in its affirmance. Execution was issued and no assets of the defendant corporation could be found and the judgment remained and now remains wholly unsatisfied.

On September 27, 1921, Anheuser-Busch Brewing Association commenced an action to enforce the liability of the stockholders of American Products Company upon the judgment claim. Green, Tuck, and Guernsey were made defendants jointly with various unknown parties, sued under fictitious names, the plaintiff alleging on information and belief that the greater portion of the stock of American Products Company was owned by the defendants named. The plaintiff then sought by process and subpoena to locate the books and records of said company, but without success. Thereafter on July 31, 1923, the present action was commenced.

The complaint in the present action, after setting up the facts as hereinbefore detailed, alleges in substance as follows: That at all times the defendants named were and are the only officers and directors of American Products Company; that prior to the commencement of the action plaintiff demanded of said defendants that plaintiff be allowed to inspect the stock and transfer book of American Products Company in order that the names of the stockholders and number of shares owned and issued might be ascertained but that the demand was refused; that plaintiff has no other means of securing such information; that defendants have at all times failed to keep and now fail to keep, in accordance with the provisions of section 378 of the Civil Code, the stock or transfer book, or any other book or record showing the names of the stockholders and the number of shares held by each, and have at all times failed and do now fail to keep said book or any such book open to inspection of stockholders, members or creditors of said American Products Company; that solely as the result of the said failure of said defendants to keep such stock and transfer book, or any other book or record showing the names of stockholders of said American Products Company, the plaintiff has been prevented from learning the names and shares owned by the stockholders, and thus damaged in the amount of the judgment.

Following these allegations the plaintiff, after pleading the same general facts, set up two additional counts, the first of which charges a wilful and fraudulent destruction of the books and records of said corporation for the purpose of depriving plaintiff of its remedy against the stockholders, and the last count alleging that defendants negligently and carelessly destroyed and lost the books and records, as a result of which loss plaintiff was damaged, etc. Defendants denied specifically all the allegations of the complaint as to the destruction of the books and records, or the alleged failure to keep the same open for inspection. Defendants allege that the American Products Company forfeited its charter on March 3, 1923, at a date prior to the commencement of the action. Further, defendants plead that the several causes of action are barred by the statutes limiting

the time within which said actions may be commenced (secs. 336 to 343, inclusive, Code Civ. Proc.).

The case was tried before the court sitting without a jury, and judgment was entered in favor of plaintiff following findings of fact in support of all of the material allegations of the complaint, and the further finding that the causes of action were not barred by the statutes of limitations.

Appellants contend for a reversal of the judgment on many grounds. Without cataloguing these contentions we will take up each one as presented.

■ It is claimed that the record is absolutely devoid of any evidence proving or tending to prove that the appellants, or either of them, ever at any time either wilfully, fraudulently, or otherwise or at all destroyed any books or records of the American Products Company, and that the finding that they did so is totally unsupported by the evidence. Respondent answers this contention by asserting that while there may be no eye-witnesses to the actual physical destruction of the stock record or other books of the American Products Company, yet there is an abundance of evidence from which the inference can be logically drawn, and that the case as a whole supports the finding made that these defendants wilfully and fraudulently destroyed the stock and transfer book of the said corporation.

To pass upon this phase of the case it is necessary to briefly summarize the evidence adduced. To obviate the necessity of repetition we will give such a statement of the evidence as will suffice for the consideration of all of the remaining points urged.

It appears that the American Products Company was organized in 1918, and was what might be termed one of the war-time corporations formed for the purpose of producing goods and supplies for which there was an emergency war-time demand. The articles of incorporation provide that the number of directors shall be three, and the names of those set out in the articles are the names of the defendants herein. These three defendants subscribed the articles of incorporation, which set forth that each of those whose names so appear has subscribed one share of the amount of $100. At a directors' meeting held on November

20, 1918, an application directed to the corporation commissioner of the state of California was prepared, and afterward in due course presented. The application sought permission to issue and sell the capital stock of the American Products Company. In this application appeared the following statement: "The aforesaid F. H. Green, R. B. Guernsey and G. A. Tuck have agreed to invest in said business the sum of $25,000 each, and have already invested the following amounts respectively: Cash paid in by F. H. Green, R. B. Guernsey and G. A. Tuck $9,000; installation of new machinery and equipment bought and paid for, $40,000; value of government contract marked 'Exhibit C' $75,000; total $129,000." This application was signed and verified by F. H. Green as president of said corporation. The application further contained this statement: "The authorized capital stock of said corporation is 1,000 shares of a par value of $100 each. There has been issued of said capital stock three shares of stock, one share to F. H. Green, one share to R. B. Guernsey and one share to G. A. Tuck, and permission is hereby asked to distribute 750 shares of this capital stock as follows: to F. H. Green 250 shares, to R. B. Guernsey 250 shares, to G. A. Tuck 250 shares." Permission was asked to sell the remaining 247 shares at par value, to wit, $100 each. The permit was granted in accordance with the application.

Nothing appears from the record to indicate any action taken pursuant to the permit. There is no evidence that any stock was issued to any person under the said permission of the corporation commissioner.

In November, 1918, the American Products Company was operating as a going concern, working upon a government contract for the furnishing of dehydrated vegetables. The corporation through its directors entered into a contract of lease of certain premises with the plaintiff Anheuser-Busch Brewing Association, and entered into possession of the premises leased. In the spring of 1919, about February or March, the government canceled the contract with the American Products Company, and as that corporation had been in no other business it appears that corporate activity thereafter ceased; in other words, its occupation was gone. Late in 1919 or in the early part of 1920 the Anheuser-

Busch Brewing Association brought suit against the American Products Company to recover rent due upon the leased premises. The facts as developed in that case appear in the reported case on appeal (*Anheuser-Busch Brewing Assn.* v. *American Products Co.,* 59 Cal. App. 718 [211 Pac. 817]). The only fact therein deserving passing comment is that in June, 1919, after the cancellation of the government contract the Products Company abandoned the leased premises. In the suit the Anheuser-Busch Association recovered judgment against the Products Company for $2,728.50, together with costs and interest. Execution was issued on the said judgment and the same was returned wholly unsatisfied. Thereafter action was instituted to enforce stockholders' liability as hereinbefore set forth.

When this last action was instituted plaintiff was put upon inquiry to ascertain the names of the stockholders and the holdings of each. Thereafter plaintiff noticed the taking of the depositions of defendants Green, Tuck, and Guernsey, and subpoena was issued directing the appearance of each of these together with a *duces tecum* ordering the production of the stock ledger and stock transfer book of the American Products Company. In answer to the subpoena Green and Tuck appeared, and upon examination each stated that he did not have the books and did not remember ever having had any books; in fact neither of these persons knew anything about the stock ledger or stock transfer book, nor did either know if any stock had ever been issued. In the depositions given by these witnesses they seemed to have a hazy idea that there might have been at one time a corporation called American Products Company with which they had been connected, but that was practically the extent of their knowledge concerning any stock records. The *subpoena duces tecum* was served upon Green and Tuck in the fall of the year 1921. The process server found Green and Tuck together. After he handed the subpoena to each of them Green called Tuck and asked him about these books and where they were, and Tuck said, "They are around the office somewhere. I will look them up." As hereinbefore stated, the books were not found and were not produced. No further proceedings were taken in the action to enforce

the stockholders' liability. The present action was thereafter commenced.

On the trial of this action little further appeared. The plaintiff perforce was obliged to rely to a great extent upon what facts he could elicit from the defendants. The only one of the defendants called or who appeared in person at the trial was Green. The testimony of this witness was characterized by the court below as unreasonable and absurd, and it well deserved this description. The stock answer to all questions was "I don't know" or "I don't remember." Only in one instance did the witness indicate any positive knowledge, and that was when he stated that the Armistice was signed in August! A knowledge of history or of current events is not always a standard by which the credibility of a witness may be measured; but in a case of this nature, where the organization of a corporation was for the sole purpose of carrying out a war-time government contract, and the business of the corporation devoted exclusively to that end, then evidence such as this supports the conclusion that the witness is not in good faith, and that little heed should be given his testimony.

It was shown further that the three shares of stock originally subscribed were in fact issued. A form of stock certificate, identified by Green, president, as being a blank certificate of stock of American Products Company, was produced in evidence. When asked if he, Green, had any connection with the issuance of stock of the corporation, he made this answer: "I did not write the certificates out. We had a bookkeeper down there, I judge he did that." It further appears that many shares of stock were issued, several hundred according to the testimony of defendants. Further, in appellants' reply brief appears a purported excerpt from a permit of the corporation commissioner authorizing the sale and issuance to one Carl Leonardt, for cash at par, of 100 shares; and the record also shows that the affairs incident to the organization of the corporation and its application to the corporation commissioner were under the direction of competent and able counsel, whose briefs here indicate a keen knowledge of corporate business and corporation laws.

From the facts as thus narrated the trial court found that defendants Green, Tuck, and Guernsey had wilfully and fraudulently destroyed the stock and transfer book of the American Products Company.

We conclude that the evidence supports the finding. While it is true that there is no witness to the physical act of destruction, yet there need be no such witness. The law does not require demonstration. If there are sufficient facts shown from which a fair and reasonable inference follows of the existence of the fact in question the demand of the law is satisfied. We have here admitted facts sufficient to support the conclusion reached. That there was a corporation organized is not disputed. This corporation had prepared forms of stock certificates and did issue stock. A fair inference from this is that a stock-book was kept. In support of this inference is the positive mandate of the law that such a book be kept. Section 378 of the Civil Code provides: Corporations for profit must keep a book in which must be kept a record of all stock, the names of the stockholders or members, alphabetically arranged, etc. There are then the general provisions of section 1963 of the Code of Civil Procedure setting forth the presumptions of law. Subdivision 15 of that section specifies as a presumption that official duty has been regularly performed, and subdivision 33 establishes it as a presumption that the law has been obeyed. Section 1960 of the Code of Civil Procedure, provides that a presumption must be founded on a fact legally proved and on such deduction from that fact as is warranted by a consideration of the usual course of business. Where stock is issued the law provides that a book be kept showing such issuance; and where a corporation such as this in question follows organization with a verified statement to the commissioner of corporations, showing an investment in excess of $100,000, surely the usual course of business warrants the inference of systematic record in compliance with statute.

The defendant Green was at all times the president of the American Products Company, and defendant Tuck the secretary, and Guernsey the treasurer, the three being also the sole directors of the corporation. Section 305 of the Civil Code provides that the corporate powers, business and property of all corporations such as this must be exer-

cised, conducted, and controlled by a board of not less than three directors. These defendant directors were therefore in control of and entitled to the possession of all of the corporate property, including the books and records of the corporation. There is, then, the significant fact that when defendants Green and Tuck were served with process requiring the production of the stock and transfer book Green called Tuck and asked him where the books were and Tuck replied, "They are around the office somewhere." Thereafter when appearing in response to the *subpoena duces tecum* both Green and Tuck state that they have not got the books and do not know where they are and cannot produce them.

We repeat it is our conclusion that the facts shown, the inferences logically following therefrom and the admissions of defendants support the finding of wilful destruction. It might be inferred that the books had been hidden or concealed. This inference is destroyed by the fact that one who conceals a thing usually knows where it is. In any event, such a nicety of differentiation should not avail a wrongdoer. The finding being thus supported, the conclusion of law-fixing liability follows.

■ Plaintiff had recovered a judgment against the American Products Company which judgment remained unsatisfied after execution issued and the corporation was without assets. Action was commenced against the stockholders within the statutory period on the original obligation. The judgment obtained against the corporation was *prima facie* evidence of the indebtedness sued upon (*Ellsworth* v. *Bradford,* 186 Cal. 325 [199 Pac. 335]). The remedy of plaintiff was absolutely conditioned upon its ability to prove the number of shares issued and to whom, and without the books and records sought this could not be done, and by the destruction of the said record plaintiff was deprived of its remedy at law and was prevented from enforcing a claim *prima facie* valid. The measure of its damage would therefore be the amount of the judgment.

■ Appellants have urged the statute of limitations as a bar to the action. No specific section of the Code of Civil Procedure is pleaded, but appellants have pleaded all of

the sections separately without indicating upon which they rely.

The cause of action would arise upon the date of destruction, and we could assume that the books were destroyed the very instant after the admission that they were there in the office. This was October, 1921. The action was commenced on July 31, 1923, less than two years thereafter. If the action were deemed one for fraud then section 338 of the Code of Civil Procedure, fixes the time of commencement within three years from discovery of facts constituting the fraud. If the action could not be classed among the causes of action enumerated in section 338 of the Code of Civil Procedure, it must necessarily come within the purview of section 343, Code of Civil Procedure, which provides a four-year limitation. The present action is not based upon any corporate contract or statutory liability in as far as this question of destroying the books may be concerned. The same cause of action would have been in plaintiff if some stranger had caused the damage to it. The fact that these defendants might have had a personal interest in depriving plaintiff of the means of pursuing his remedy against them, while adding a motive for the destruction, in no way otherwise alters the case.

We find no prejudicial error in the rulings of the trial court in the admission of evidence.

■ It must be noted, however, that what has been said applies only to defendants Green and Tuck. Defendant Guernsey in nowise was shown to be connected with the loss of the books. Nor could his liability be predicated upon his failure to keep proper corporate records for the reason that the wilful destruction presupposes the existence of the records. Absolutely nothing appears in the transcript before us indicating the connection of Guernsey other than that possibly he might have benefited by the failure or inability of plaintiff to carry on its suit against the stockholders. This is not sufficient to sustain any judgment against him in this action.

It might be added that the entire record here discloses an attitude on the part of defendants not to be commended. It evidences a studied attempt to prevent plaintiff from pursuing the remedies afforded it by law, and the testimony

of defendants is evasive and sham almost to the point of contempt. Defendants obviously appreciated the difficulties confronting plaintiff in its efforts to prove any fact concerning the corporate records, and mistakenly relied upon the supposed weakness of the law to bar plaintiff from any relief. There can be no wrong without a remedy; and we feel the law retains sufficient of its vigor to satisfy the demand of justice in the instant case.

As to defendant R. P. Guernsey the judgment is reversed. As to defendants Fred H. Green and George A. Tuck the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 28, 1928.